## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLOTTE BARK,<br><br>            Plaintiff,<br><br>  v.<br><br>W.R. GRACE & CO., ROBERT F. CUMMINGS, JR., DIANE H. GULYAS, JULIE FASONE HOLDER, HUDSON LA FORCE, HENRY R. SLACK, CHRISTOPHER J. STEFFEN, MARK TOMKINS, and SHLOMO YANAI,<br><br>          Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Charlotte Bark ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by W.R. Grace & Co. ("Grace" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Grace and the Defendants.

## SUMMARY OF THE ACTION

1.    This is an action brought by Plaintiff against Grace and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and

20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of the Company by affiliates of Standard Industries Holdings Inc. ("Standard Industries") (the "Proposed Transaction").

2.      On April 26, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Standard Industries.  Pursuant to the terms of the Merger Agreement the Company's shareholders will have the right to receive $70.00 in cash for each share they own (the "Merger Consideration").

3.      On August 10, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Grace and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Grace shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Grace shares.

9.      Defendant Grace is incorporated under the laws of Delaware and has its principal executive offices located at 7500 Grace Drive, Columbia, Maryland 21044.  The Company's common stock trades on the New York Stock Exchange under the symbol "GRA."

10.      Defendant Robert F. Cummings, Jr. ("Cummings") is and has a Grace director at all times during the relevant time period.

11.      Defendant Diane H. Gulyas ("Gulyas") is and has been a Grace director at all times during the relevant time period.

12.      Defendant Julie Fasone Holder ("Holder") is and has been a Grace director at all times during the relevant time period.

13.      Defendant Hudson La Force ("Force") is and has been the President, Chief Executive Officer "(CEO) and a director of Grace at all times during the relevant time period.

14.      Defendant Henry R. Slack ("Slack") is and has been a Grace director at all times during the relevant time period.

15.     Defendant Christopher J. Steffen ("Steffen") is and has been the Chairman of the Board of Grace at all times during the relevant time period.

16.     Defendant Mark Tomkins ("Tomkins") is and has been a Grace director at all times during the relevant time period.

17.     Defendant Shlomo Yanai ("Yanai") is and has been a Grace director at all times during the relevant time period.

18.     Defendants Cummings, Gulyas, Holder, Force, Slack, Steffen, Tomkins, and Yanai are collectively referred to herein as the "Individual Defendants."

19.     The Individual Defendants, along with Defendant Grace, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20.     Grace, through its subsidiaries, produces and sells specialty chemicals and materials worldwide. It operates through two segments, Grace Catalysts Technologies and Grace Materials Technologies. The Grace Catalysts Technologies segment offers fluid catalytic cracking (FCC) catalysts for the production of transportation fuels, such as gasoline and diesel fuels, and petrochemicals; and FCC additives. This segment also provides hydro processing catalysts used in process reactors to upgrade heavy oils into lighter products; polyolefin and chemical catalysts used for the production of polypropylene and polyethylene thermoplastic resins; and chemical catalysts, as well as gas-phase polypropylene process technology to manufacture polypropylene products. The Grace Materials Technologies segment offers functional additives and process aids, such as silica gel, colloidal silica, zeolitic adsorbents,

precipitated silica, and silica-aluminas; and fine chemical intermediates and regulatory starting materials for use in consumer/pharma, coatings, and chemical process applications.

## The Company Announces the Proposed Transaction

21.     On April 26, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> COLUMBIA, Md. and NEW YORK, April 26, 2021 (GLOBE NEWSWIRE) -- W. R. Grace & Co. (NYSE: GRA), a leading global specialty chemical company and Standard Industries Holdings Inc., the parent company of Standard Industries, a privately held global industrial company, today announced that they have entered into a definitive agreement under which Standard Industries Holdings will acquire Grace in an all-cash transaction valued at approximately $7.0 billion, including Grace's pending pharma fine chemistry acquisition. Standard Industries' related investment platform 40 North Management LLC ("40 North") is a long-standing shareholder of Grace.
>
> Under the terms of the agreement, Standard Industries Holdings will acquire all of the outstanding shares of Grace common stock for $70.00 per share in cash. The purchase price represents a premium of approximately 59% over Grace's closing stock price of $44.05 on November 6, 2020, the last trading day prior to the announcement of 40 North's initial proposal to acquire the Company on November 9, 2020. The Grace Board of Directors unanimously approved the transaction.
>
> David Millstone and David Winter, Co-CEOs of Standard Industries Holdings, said, "We are thrilled to welcome Grace to the Standard Industries family and look forward to working with its exceptional team to usher in a new era of innovation and growth for Grace, its employees, customers and the communities in which it operates."
>
> "We are confident that our agreement with Standard Industries Holdings is the best path forward for Grace and our shareholders," said Hudson La Force, Grace's President and Chief Executive Officer. "Standard's $7 billion investment in Grace reflects their confidence in the significant growth opportunities we have and enables our shareholders to realize immediate value at a significant cash premium. This announcement is a testament to the strengths of our talented employees, industry-leading technologies, and deep global customer relationships."
>
> The closing of the transaction is subject to customary closing conditions, including approval by Grace shareholders and the receipt of certain regulatory approvals. The transaction is not contingent upon the receipt of financing.

Financing commitments have been provided by J.P. Morgan, BNP Paribas, Citi and Deutsche Bank, and investment funds affiliated with Apollo Global Management as capital partner.

40 North, a holder of 14.9% of shares of Grace common stock, has entered into a voting agreement with Grace, pursuant to which it has agreed, among other things, to vote its shares of Grace common stock in favor of the transaction.

Consistent with the terms of the merger agreement, the Company will suspend payment of a dividend going forward.

In light of this announcement, Grace will issue its first quarter 2021 earnings results on May 6, 2021, but will not be hosting an earnings conference call.

The parties expect the transaction to close in the fourth quarter of 2021. Upon completion of the transaction, Grace will become a privately held company and Grace's common stock will no longer be listed on the New York Stock Exchange.

Grace will operate as a standalone company within the portfolio of Standard Industries Holdings, which includes Standard Industries' industry leading businesses GAF, BMI Group, Schiedel, Siplast, SGI and GAF Energy.

**Advisors**

Goldman Sachs & Co. LLC and Moelis & Company LLC are serving as financial advisors and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Grace.

Citi and J.P. Morgan are serving as financial advisors and Sullivan & Cromwell LLP is serving as legal counsel to Standard Industries Holdings.

### FALSE AND MISLEADING STATEMENTS
### AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

22.    On August 10, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

23.    Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's

6

shareholders to make informed decisions regarding whether to vote in favor of the Proposed

Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

## Material False and Misleading Statements or Material
## Misrepresentations or Omissions Regarding the Company's Financial Projections

24.     The Proxy Statement contains projections prepared by the Company's

management concerning the Proposed Transaction, but fails to provide material information

concerning such.

25.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can

be inherently misleading, and has therefore heightened its scrutiny of the use of such

projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new

and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs

regarding forward-looking information, such as financial projections, explicitly requires

companies to provide any reconciling metrics that are available without unreasonable efforts.

26.     In order to make management's projections included in the Proxy Statement

materially complete and not misleading, Defendants must provide a reconciliation table of the

non-GAAP measures to the most comparable GAAP measures.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

27.     Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; and (ii) Adjusted EBIT.

28.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Financial Opinions

29.     The Proxy Statement contains the financial analyses and opinion of Goldman Sachs & Co. LLC ("Goldman Sachs") and Moelis & Company LLC ("Moelis") concerning the Proposed Transaction, but fails to provide material information concerning such.

30.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the Company's terminal values; (ii) the inputs and assumptions underlying Goldman Sachs' use of the multiples ranging from 9.5x to 11.5x; (iii) the inputs and assumptions underlying Goldman Sachs' use of the discount rates ranging from 8.0% to 9.0% and of 8.5%,  (iv) the weighted average cost of capital for Grace; (v) the Company's EBITDA; (vi) the basis underlying Goldman Sachs' use of the range of perpetuity growth rate of 2.0% to 3.9%; (vii) the Company's net debt;  and  (viii)  the number of fully diluted outstanding shares of Grace common stock.

31.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Goldman Sachs' use of the range of multiples of 9.0x to 11.0x; (ii) the inputs and assumptions

underlying Goldman Sachs' use of the discount rate of 10.13%; and (iii) the dividends selected for the analysis.

32.     With respect to Goldman Sachs' *Selected Transactions Analysis* for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for each transaction observed by Goldman Sachs in the analysis.

33.     With respect to Goldman Sachs' *Premia Analysis*, the Proxy Statement fails to disclose each transaction observed by Goldman Sachs in the analysis, as well as the premiums paid in each of the transactions.

34.     With respect to Goldman Sachs' *Selected Public Company Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Goldman Sachs in the analysis.

35.     With respect to Moelis' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the net operating losses and other tax credits for the Company; (ii) the Company's terminal values; (iii) the inputs and assumptions underlying Moelis' use of the discount rate range of 7.50% to 9.25%, (iv) the inputs and assumptions underlying Moelis' use of the cost of equity range of 8.5% to 12.5%; (v) the inputs and assumptions underlying the range of multiples of 9.5x to 10.5x; (vi) the Company's net debt; and (vii) the number of fully diluted outstanding shares of Grace common stock.

36.     With respect to Moelis' analysis of research analysts' stock price targets, the Proxy Statement fails to disclose the price targets observed by Moelis in the analysis, as well as the sources thereof.

37.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

38.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Background of the Transaction**

39.     The Proxy Statements fails to provide material information regarding the background of the Proposed Transaction.

40.     Specifically, the Proxy Statement fails to disclose: (i) sufficient information regarding the existence of and/or number and nature of all confidentiality agreements entered into between the Company and any interested third party during the sales process, if their terms differed from one another, and if they contained "don't-ask, don't-waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid; and (ii) sufficient information regarding communications about post-transaction employment and directorship during the negotiation of the Proposed Transaction.

41.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide

shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

44.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

47.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

48.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

49.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were

intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

50.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

51.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of Grace within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Grace, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

56.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 20, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*